**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:12-CV-399
BANKRUPTCY CASE NO. 10-40125**

| | |
|---|---|
| **IN RE:** ) | |
| ) | |
| **RICHARD WARREN FINDING AND** ) | |
| **JUANITA LEATHERMAN FINDING,** ) | |
| ) | |
| **Debtors,** ) | |
| _____) | **MEMORANDUM AND** |
| ) | **OPINION** |
| **PEOPLES BANK,** ) | |
| ) | |
| **Appellant,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **ONEWEST BANK, FSB,** ) | |
| ) | |
| **Appellee.** ) | |
| _____) | |

Peoples Bank appeals the Bankruptcy Court's grant of summary judgment in favor of OneWest Bank in Adversary Proceeding No. 10-4033, the effect of which gave OneWest Bank lien priority over Peoples Bank on the home of the Debtors, Richard and Juanita Finding.[1]  For the reasons that follow, this Court will affirm the Bankruptcy Court's decision.

_____
[1] Peoples Bank also has filed a motion to supplement the record on appeal with the exhibits originally attached to the Adversary Proceeding Complaint.  The Court grants this motion and makes such exhibits a part of the record.

## FACTUAL BACKGROUND

Richard and Juanita Finding (the "Debtors") purchased real property located at 251 First Broad Drive, Bostic, North Carolina, 28018, (the "Property") on September 29, 2000, from First Broad Acres, Inc., as evidenced by a deed recorded in the Rutherford County, North Carolina, Register of Deeds office in Deed Book 762 at Page 344. [Doc. 4-4 at 1 to 2].  On November 9, 2004, the Debtors borrowed $184,038.00 from Union Federal Bank of Indianapolis to refinance the Property.  Union Federal Bank filed its deed of trust against the Property securing this loan on November 17, 2004, as referenced in Deed Book 815 at Pages 496-510 of the Rutherford County, North Carolina, Register of Deeds office. [Doc. 5-2 at 11 to 25].

On July 31, 2006, the Debtors obtained a home equity line of credit from Peoples Bank in the amount of $85,000.00 (the "Peoples Bank Loan"). Peoples Bank secured this equity line with a deed of trust against the Property in the amount of $85,000.00 filed August 21, 2006, in Deed Book 914 at Pages 301-310 of the Rutherford County, North Carolina, Register of Deeds office (the "Peoples Bank Deed of Trust").  [Doc. 4].

In an effort to consolidate their loans, the Debtors borrowed $286,200.00 from IndyMac Bank F.S.B., on September 21, 2007.  The

IndyMac loan was secured by a deed of trust filed on October 29, 2007, in Deed Book 982 at Pages 1-16 of the Rutherford County, North Carolina, Register of Deeds office. [Doc. 5-2 at 26 to 41]. This loan was assigned to OneWest Bank F.S.B.[2] thereby making OneWest Bank the successor in interest to IndyMac. [Doc. 1-2 at 3, n.1]. Accordingly, as it pertains to IndyMac's deed of trust on the Property, it will be referred to herein as the "OneWest Bank Deed of Trust."

Proceeds from the loan from IndyMac paid in full the outstanding loans owed both to Union Federal Bank and to Peoples Bank. CitiMortgage, as assignee of the Debtors' Union Federal Bank securities, caused a satisfaction of indebtedness to be filed in the Rutherford County Register of Deeds office canceling its deed of trust. [Doc. 5-2 at 42]. With regard to Peoples Bank, it received a wire transfer in the amount of $86,227.21[3] on September 28, 2007, with a text statement on the wire transfer sheet indicating that such amount was a "PAYOFF" of the Debtor's loan. [Doc. 5-1 at 1]. Peoples Bank thereafter entered in its ledger a

---

[2] IndyMac Bank F.S.B. was closed by the Office of Thrift Supervision on July 11, 2008, with the FDIC being named conservator. The FDIC thereafter sold most of IndyMac's securities to OneWest Bank F.S.B.

[3] The wire transfer of $86,227.21 from IndyMac Bank to Peoples Bank was actually an amount greater than the sum total of principal and interest then owed by the Debtors to Peoples Bank, which was $85,523.97. Peoples Bank refunded the excess $703.24 proceeds to the Debtors. [Doc. 5 at 10].

description that this sum was a "PAYOFF" of the Peoples Bank Loan rendering the Debtors' account balance to be ".00". [Doc. 5-2 at 5]. Despite receiving the payoff proceeds on September 28, 2007, and noting the nature of the same in its ledger that day, Peoples Bank failed to cancel the Peoples Bank Deed of Trust. Twelve days later, the Debtors began borrowing again pursuant to the Peoples Bank Loan, nearly reaching its cap within four months. [Doc. 5-2 at 5, 7].

## PROCEDURAL HISTORY

On February 25, 2010, the Debtors filed Chapter 13 bankruptcy in this District. [Doc. 3-1 at 16-18]. The Bankruptcy Court confirmed the Debtors' plan on May 8, 2010, and granted Peoples Bank relief from the stay to foreclose upon the Property. [Doc. 4-1 at 5]. On August 3, 2010, the Rutherford County Clerk of Court held a hearing on Peoples Bank's foreclosure of the Peoples Bank Deed of Trust and approved the sale of the Property. [Doc. 1-2 at 4].

On September 10, 2010, the Bankruptcy Court entered a temporary restraining order (TRO) staying the foreclosure sale and confirmation bid on the Property. [Doc. 1-2 at 4]. The TRO permitted OneWest Bank to commence an Adversary Proceeding to determine the priority of liens over the Property. OneWest Bank filed the Adversary Proceeding in the

Bankruptcy Court on October 8, 2010, to determine priority of the Peoples Bank Deed of Trust and the OneWest Bank Deed of Trust, and to quiet title to the Property in the Debtors' name subject to a first priority lien of OneWest Bank. [Doc. 4-1 at 12-19]. On November 30, 2012, the Bankruptcy Court granted summary judgment in favor of OneWest Bank, ruling that it was entitled to a first-priority lien on the Property and that the Peoples Bank Deed of Trust was not a valid lien on the Property. [Doc 5-3 at 25-38]. Peoples Bank now appeals.

## STANDARD OF REVIEW

A bankruptcy court's determination of the "priority of liens[ ]" is a core proceeding. 28 U.S.C. § 157(b)(2)(K). As such, this Court sits as an appellate court in bankruptcy, and this Court may not, generally speaking, set aside a finding of fact made by the bankruptcy court unless it is clearly erroneous. Bankruptcy Rule 8013; In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992). This Court's review of the bankruptcy court's application of the law is *de novo*. Johnson, 960 F.2d at 399. Given the Bankruptcy Court's resolution of this case in favor of OneWest Bank on summary judgment, this Court must apply a *de novo* standard. In re Campbell, 812 F. 2d 1465, 1467 (4th Cir. 1987).

## ANALYSIS

As is often the case with mortgagees contesting the priority of their respective liens, the battle is won or lost not by the resolution of factual disputes but upon the effect the undisputed facts have on the interpretation of the parties' security instruments. This matter is no different. At first blush, Peoples Bank would appear to be in a superior position to claim lien priority over OneWest Bank since the Peoples Bank Deed of Trust is first of record with the Rutherford County Register of Deeds. A careful review of the Peoples Bank Deed of Trust and North Carolina mortgage law, however, discloses this proposition to be incorrect.

North Carolina statutory law recognizes instruments — deeds of trust — that secure both future advances and equity lines of credit. N.C. Gen. Stat. §§ 45-67 to -74, 45-81 to -84. A future advances deed of trust secures a "disbursement of funds or other action that increases the outstanding principal balance owing on an obligation for the payment of money." N.C. Gen. Stat. § 45-67(1). A common example of a future advances deed of trust is an instrument used to perfect a bank's security interest in future monies loaned to enable a consumer to build or to refurbish a house.

An equity line of credit deed of trust, on the other hand, secures a written agreement between a lender and a borrower for an extension of credit, for a time period less than 30 years, whereby the borrower can obtain funds up to an agreed upon aggregate limit and thereafter pay back principal and interest to reduce the amount advanced toward such limit. N.C. Gen. Stat. § 45-81(3). An equity line of credit is used by a consumer in a manner similar to how she would use a credit card in that a lender extends credit on a revolving basis so long as the consumer "pays down" the balance to keep it below the agreed upon threshold. Due to the vacillating nature of an equity line of credit, North Carolina law contemplates that a borrower may pay down the balance, even to zero, without necessarily extinguishing the priority of the instrument securing the debt.

> An equity line security instrument shall, from the time and date of its registration, have the same priority to the extent of all advances secured by it as if the advances had been made at the time of the registration of the equity line security instrument, notwithstanding the fact that from time to time during the term of the equity line of credit no balance is outstanding.

N.C. Gen. Stat. § 45-82. The Peoples Bank Loan, by its very terms, was an "Equity Line of Credit." The Peoples Bank Deed of Trust, by its express terms, was a "Future Advances Deed of Trust" but, by operation of North

Carolina law, became an equity line of credit deed of trust because the Peoples Bank Deed of Trust showed on its face that it secured an equity line of credit. N.C. Gen. Stat. § 45-83.

Even though North Carolina sets forth a framework prescribing the manner and form of acceptable instruments securing both future advances and equity lines of credit, the state's provisions are not exclusive, leaving otherwise valid contract terms up for negotiation between the parties. See N.C. Gen. Stat. § 45-74 ("The provisions of this Article [governing future advances and obligations] shall not be deemed exclusive. Nothing in this Article shall invalidate or overrule any rule of validity or priority applicable to any security instrument failing to comply with the provisions of this Article."); N.C. Gen. Stat. § 45-84 ("Except as otherwise provided in G.S. 45-83, the provisions of this Article [governing instruments to secure equity lines of credit] are not exclusive. Nothing in this Article shall invalidate or overrule any rule of validity or priority applicable to any mortgage, deed of trust, or other security instrument failing to comply with the provisions of this Article."). Given this latitude, the Peoples Bank Deed of Trust contains a satisfaction provision in paragraph 20 which states:

> Release. Upon payment in full of the Secured Obligations and all other sums secured by this Deed of Trust, Lender or Trustee shall cause the

cancellation of this Deed of Trust.  Grantor shall pay
any recording fees incident to such cancellation.

While the cancellation of a deed of trust, premised upon payment in full, is not atypical for a future advances security, it is unusual for an equity line of credit security given the revolving nature of the credit contemplated by the security.  Peoples Bank argues that the satisfaction provision of the Peoples Bank Deed of Trust does not override the requirement of N.C. Gen. Stat. § 45-71[4] that a written request for cancellation be made before a future advances deed of trust can be cancelled.  For well over a century, the law in North Carolina has been that "[a] mortgage is a contract, and the parties may affix such terms and conditions as they see fit, provided creditors or others interested at the time are not affected thereby. The registration is notice to all persons who may thereafter become interested." McIver v. Smith, 118 N.C. 73, 75, 23 S.E. 971, 972 (1896).  As a contract, the Peoples Bank Deed of Trust is subject to the rules governing contract interpretation.  Foremost among these rules is the determination of the parties' intent.  In re Fortescue, 75 N.C.App. 127, 130, 330 S.E.2d 219, 222

---

[4] As discussed above, the Peoples Bank Deed of Trust, while explicitly stating that it was a future advances deed of trust governed by Chapter 45, Article 7, of the North Carolina General Statutes, became an equity line of credit deed of trust pursuant to N.C. Gen. Stat. § 45-83, and was governed by Article 9 of Chapter 45.  However, because neither Article 7 nor Article 9 preempts contracting parties from tailoring the terms of their security instruments as they see fit, the resolution of Peoples Bank argument under either Article is the same.

(1985) ("The court's primary purpose in construing a contract is to ascertain the intention of the parties."). If the contract, as written, describes the parties' obligations unmistakably, the court's task to discern meaning is at an end. Weyerhaeuser Co. v. Carolina Power & Light Co., 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962) ("When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit.").

In this case, the parties executed a future advances deed of trust to secure an equity line of credit loan. The deed of trust form chosen included a clear, precise, and unambiguous satisfaction provision that required Peoples Bank to cancel the deed of trust upon payment in full of the Debtors' secured obligations, nothing more. Peoples Bank, in arguing that it was entitled to a request or demand for cancellation as provided for by statute, is essentially asking this Court, under the guise of interpretation, to "insert what the parties elected to omit." This, the Court will not do. The statutory provisions of North Carolina law applicable to deeds of trust securing future advances and equity lines of credit are not exclusive. This Court will enforce the plain terms of the contract negotiated by the parties as the best evidence of their intent.

When the Debtors obtained their consolidation loan from IndyMac Bank, the proceeds of that loan paid in full the Peoples Bank Loan rendering an account balance of zero. IndyMac, as the refinancing lender, obviously did rely upon the cancellation of the Debtors' prior deeds of trust because it sought first priority lien position.  IndyMac's wire transfer to Peoples Bank included the text statement, "PAYOFF."  Moreover, Peoples Bank acknowledged in its own ledger entry that the proceeds of the IndyMac loan were a "PAYOFF" of the Peoples Bank loan. Under the express terms of the satisfaction provision of the Peoples Bank Deed of Trust, Peoples Bank was thus obligated to cancel its deed of trust of record.

In short, the Peoples Bank Deed of Trust contained no conditions precedent to cancellation once payment in full was received by the bank. Since Peoples Bank received full payment, it was obligated to cancel the Peoples Bank Deed of Trust.  The fact that Peoples Bank continued to lend the Debtors money after receipt of full payment did not extend the enforceability of the Peoples Bank Deed of Trust as a valid lien on the Property.  The full payment of the balance changed the status of any further advances on the Peoples Bank Loan to that of an unsecured debt.

For these reasons, the Judgment of the Bankruptcy Court was correct and will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the order of the Bankruptcy Court granting summary judgment in favor of OneWest Bank in all respects is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Appellant's Motion to Clarify for Supplement Record on Appeal [Doc. 8] is **GRANTED**.

Signed: July 10, 2013

Martin Reidinger
United States District Judge